Thank you, Your Honor. Thank you, Rupert K. Rose. May it please the Court, Your Honor, I have only a very few points, as I've reviewed again the record before the Court. I think the briefs on both sides fairly well provide the Court with a roadmap, as does the Murphy case in the Ninth Circuit, where a panel heard a very similar case, albeit not involving as nearly as big a catastrophe, but I've heard a very similar case about the application of a form selection clause in a contract. And rather than reiterate all those things, I want to just point out a few things and then be available for your questions. I'd like to take about five minutes and then reserve the rest of your time for rebuttal. First of all, I think that one of the points we made in our reply brief needs to be emphasized, and that is that the contract that Holland America and Winsong are suing on are oral contracts with Bureau Veritas for annual surveys conducted in the years following 1998 and after the year 2000. The district court in this case applied a French form selection clause that was in a construction-related contract dating back from 1980 to 1991. The essence of plaintiffs' allegations against Bureau Veritas is that surveyors coming out for annual surveys after 1998 either failed to disclose or find this defect in a fuel line that eventually caused the fire, or failed to ensure that the vessel met the standards that were then applicable, that is to say, applicable after 1998 and after the year 2000, when actually Bureau Veritas rules themselves had changed. Their own standards, Bureau Veritas standards, had changed after the year 2000. Now, apparently they changed the form selection clause to have arbitration in London for these types of matters? Your Honor, the clause said a couple things. It changed the form selection to France to dealing with questions of invoicing. And as I recall, and the Court correctly points out, it does have a London arbitration clause in that 2000 agreement. And that arbitration clause would apply to this kind of a dispute? Your Honor, it would, and I can tell the Court why I don't believe it does. I mean, the second part of the plaintiff's argument here is that the form selection clause that were in Holland America's terms and conditions, which were conveyed to Bureau Veritas Well, I'm just trying to, at the moment, determine what the Bureau's clause was. It was arbitration in London. Is that right? That's correct. But you haven't heard that from the other side, Your Honor. You haven't heard that we want to arbitrate this case in London. They haven't even asked for the case to be arbitrated in London. They have argued that the form selection clause in 1988 through 1991 survey contracts is what governs here. Well, let me get to a different question, and that has to do with Holland America's terms and conditions or website conditions. As I understand it, the basis for your argument is an e-mail advice of those conditions. Is that correct? Well, with regard to that issue, you're correct, Your Honor. And that limited issue is whether or not the terms and conditions of Holland America's form selection clause were appropriately provided to or notice was given to Bureau Veritas. And that is correct. They were e-mailed to Mr. LaRoche in connection with one of the annual surveys, and they were also available via the website, and they were also incorporated in the purchase orders for the annual surveys. On the invoices that were given to Bureau Veritas, we incorporated those very terms. And so at the very least, Your Honor, and I don't mean to cut you off, the court, the district court had here a competing questions of fact with regard to the ---- That's my concern, is that, is that even if we take that fact as given, let's just take the so-called notice via the e-mail, which all it said, doesn't say it's been received, there's no evidence it's been received. It says we sent an e-mail to this person. If that's true, and we take it as true but we'll have it in the fact late most favorable to your client, if it can be determined as a matter of law that that's insufficient to invoke the terms and conditions, why do we need to get into this big dispute over whether there's a factual issue? Well, let me address that question first, Your Honor. And I'm talking now just about the e-mail thing. I'm not talking ---- then we'll go talk about the invoices. I can't imagine how if you resolve all reasonable inferences in favor of our client, you couldn't accept the fact that sending the e-mail to the surveyor and putting it on our invoices wouldn't be sufficient to put them on notice. If the Court concluded that it was not insufficient as a matter of law, then I would  agree. Now, as to these invoices, you allege that you put them on all your invoices. That is correct. And you furnished one sample invoice. We did furnish a sample invoice. That's correct. And that is in the record, Your Honor. But you didn't furnish any actual invoices that went to them. I don't believe we did, Your Honor. Why not? I mean, you know, the real problem I have with this case is that in the end, how America has this burden, and this is a thin, thin record, I mean, you're basically asking us to say, well, on the prospect that we have a sample invoice and one claimed e-mail, that that's the basis. Your Honor, we have a declaration from Mr. McGarva that indicates that he did send it and that they were sent on all the invoices. That factually hasn't been rebutted, and it needs to be accepted. I will agree with you, Your Honor, that if, had this been a motion for summary judgment, for example, which essentially is what the Court turned it into, that there might have been an effort on both parties' parts and certainly an opportunity to have developed the record further. But on a 12b motion, the very outset of the case where there was a very limited amount of discovery that was permitted, BV did not submit to discovery, jurisdictional discovery, nor did the Court allow for any jurisdictional discovery. So what we had was what we had on our side. And we gave the Court enough, I think, if you follow the roadmap in Murphy, to create the question and allow the matter to go forward and not have us lose our choice of form and our day in court at the very first outset. I think going back to the – if I've answered the Court's question, hopefully – going back to the next really important point, and that is that the Court has applied this form selection clause in a 1988 French contract to BV North America and to BV Canada. BV North America and BV Canada were not parties to that contract back in 1998 or in 1991. They weren't even in existence in 1998, 88, or 1991. The only possible contracts this Court should be looking to and the district court should have looked to, to determine whether or not BV North America or BV Canada can avail themselves of a form selection clause, are the oral contracts that were made between Holland America and BV at the time that they started doing the annual surveys. The annual surveys that were done by Bureau Veritas did not incorporate or even reference the prior contract between BV and – and Holland America's predecessor. Holland America wasn't even a signatory or a party to that original contract. There was no attempt to incorporate or – or reference this form selection clause from a 1988 contract in the oral contracts that happened much later. So it seems rather odd and, frankly, ridiculous that we could be sitting 15 years later and two companies that didn't even exist are trying to benefit from and are actually benefiting from a French form selection clause dealing with a construction contract and construction surveys when they didn't even exist. And essentially, that is the essence of the problem we have with the application of the French form selection clause, you know, to Holland America, irrespective of whether the Court deems the transfer of Holland America's terms and form selection clauses back to BV and BV N.A. and BV Canada was sufficient. What the Court did, the district court did, is apply a French form selection clause from a 1988 to 1991 contract to parties that weren't even a party to it. And, more importantly, if you look at the Minetti-Ferro case, the issues about which ultimately this case will revolve don't involve the – the construction contract or the construction surveys. If they did, we'd have a hard argument to say, well, you shouldn't apply this French form selection clause because we're dealing with contract problems and what happened in the surveys back when the vessel was built. What our claim involves is defects, if you will, in the kinds of services that were provided to Holland America after 1998 and after 2000. Did these surveyors meet their obligation to – to have the vessel properly in class, to make sure the fuel lines were appropriate and standard, or to discover a defective fuel line at that time, not back in the shipyard. And I'll reserve your question on the jurisdictional question. What is the evidence that there was an acceptance of these terms by Wärtsilä? That's one of the bases for jurisdiction, I understand. The only – the only argument there, Your Honor, is simply one of apparent authority. We have an agent, a distributor, which the evidence in the record indicates in Wärtsilä North America was actually hired by and retained by pursuant to a distributor agreement to act as Wärtsilä Finland and Wärtsilä's agent. The question of whether or not they had apparent authority to bind in receiving that notice is a question which I think we fairly raised with the district. But can I maybe just step back? It's based solely on receipt of a notice as opposed to any affirmative conduct on their part. Is that correct? Well, I think we've argued, Your Honor, and your Court should have seen in the record that we've argued that they never complained about the application. You're not answering my question. Your position, as I understand it, is based solely from an evidence point of view on the transmission of the document, but not on any affirmative conduct on their part. Notice there's no evidence of any affirmative acceptance on their part. That is correct, Your Honor. Silence. Silence. That's the argument you make. That is correct. Okay. And also, Your Honor, we don't know at this point, because we weren't allowed sufficient discovery, and we don't know whether or not Wärtsilä North America had apparent authority and had conveyed back to the parent that we're accepting these terms here, and we just want to let you know that. They didn't let you know that, though. That's correct. Okay. Back to the Bureau for a moment. We were to find that there were no forum selection clauses at all. Do we send it back to have you figure out whether you've got personal or general jurisdiction? That would be correct, Your Honor. I'll reserve a few minutes for rebuttal. Thank you, Your Honor. You may do that. May it please the Court. My name is Christopher Kendi. I'm the attorney for Bureau Veritas S.A., which is the French company Bureau Veritas North America and Bureau Veritas Canada. I will be sharing oral argument with Mr. Zingoni, who represents the Wärtsilä entities, and hopefully will be done well before the 7-minute mark. I would, first of all, like to recall certain factual errors which I believe plaintiff's counsel referred to in the oral argument. There is no invoice addressed to Bureau Veritas that has any terms and conditions that suggest that the forum is Seattle and that Washington law applies. When you say that there are no invoices, you mean there are none in the record? None in the record, correct. We don't know whether there are any. I'm not aware of any invoice. The only communication I'm aware of is what's in the record, which is the e-mail reference to not the company in France that does the surveys, but to a Canadian company that arranged for the surveys. And that e-mail is not identified. It doesn't say when it was sent or to whom or under what circumstances. I want to ask one more question about the invoices. There is a sample.  It's to Wärtsilä, Your Honor. I'm sorry? It's to the other defendants, to the Wärtsilä entities. There's no BV invoice in the record. As I understood it, that was supposedly the standard invoice to everyone, not just to Wärtsilä or however it's pronounced. Is that an incorrect understanding? I'm not aware of any invoices. I believe that BV invoiced. There are invoices in the records with respect to BV invoices having references to their general conditions, but there are no invoices going from the plaintiff to Bureau Veritas. Bureau Veritas conducted surveys, and again, this is the French company. BV Canada and BVNA did not conduct any surveys. This vessel was never in Washington or Vancouver. These surveys were generally conducted in the South Sea, in Tahiti. The last one before the vessel caught fire was in Auckland, New Zealand. BV sent invoices, and there are some sample invoices in the record, as the Court correctly points out, coming from the BVNA to Holland America Line in Seattle. But there are no invoices running in the other direction. And the only centi --" it's not even a centilla of evidence that these general conditions that Holland America Line is talking about were communicated to any BV entity, is this mysterious e-mail to the Canada entity. The other thing I want to correct is I think yes, Your Honor. Let me just stop there. I mean, I think what I hear their argument is that they've put in enough to raise some specter of a factual dispute that it was sent and that some BV-related entity was on notice. And you say, no, we've got these preexisting contracts, and now we have a collision between two possibilities, and therefore it's enough under Murphy to say, why wouldn't the district court at least give everybody a fighting chance in terms of some discovery and then a hearing? And, Your Honor, that is because I think the district court did not believe that there was adequate allegation in the four years since the loss of this vessel and the one year of motion practice below to even support discovery. It is correct that the Court was asked for discovery. I'm not sure exactly on what issues and deny that, but I think there has to be some showing of some question. The standard of review here, which I don't agree with my colleague, is abuse of discretion of the district court's enforcement of a forum selection clause, and that is two decisions that Judge Graber actually authored, Hyundai Liberty cases. The sites are in the record. So we have an abuse of discretion standard in which this Court reviews abuse of discretion of the district court's decision whether to enforce a forum selection clause, also citing the Fireman's Fund case in the brief. That's at 408F3. That's true, but then how do you mesh that with the Murphy requirement? That's a good question, Your Honor. And the reason Murphy dealt with one single issue, which had to do with the availability of a foreign forum, Mr. Murphy had been injured. He was a truck driver. First of all, it's a situation involving an individual in an employment contract. It's not a situation where you have two sophisticated companies. And that situation, Mr. Murphy claimed that enforcement of the foreign selection clause would deprive him of a day in court because he was physically unable to travel to Wisconsin where the forum was provided for. And the district court ruled that that was not adequate, and the court of appeals sent it back because he said the court of appeals said there was a question of fact as to whether there was an availability of a forum. This is a situation where we have a contract that is clear and unambiguous on its face, and it's the other point I would like to get to before I sit down. These are not construction contracts. I frankly do not know where the plaintiffs are getting this idea that these contracts that are cited in the record are relating to the construction of the vessel. The vessel was built in 1987. These contracts from 1989 and 1991, the 91 contract actually being signed by Holland America Line as agent for the owner of the vessel, which is a Bahamian corporation, refer specifically to, I'm reading now again from the supplemental excerpts of 66. The undersigned Holland America Line declares being aware of bureaucratic related to the surveys to be carried out for the maintenance of class, in particular in the event of grounding or damage, and of the Marine Branch general conditions given hereunder, and the general conditions, of course, include the Forum Selection Clause. So we have Holland America Line signing a contract for surveys in connection with the classification of the vessel, not the construction of the vessel. There is no support for the claim that these were constructional. Ginsburg. What do we do with the 2000 and 2004 general conditions promulgated by BV that had to do with England rather than France? Well, the issue of the later conditions was the reason that Judge Fletcher asked that question about arbitration in the U.K. Those were actually raised in sur reply briefs below, and they were never the argument or the idea that maybe there are these other general conditions and we can defeat the Forum Clause by saying, well, their later general conditions came up in their reply papers and in sur reply affidavits. So that's why it was never really addressed below. We contend that the original contract applies, and it's a French Forum Selection Clause. Let me just walk you through a couple of quick things. If we were determined that you need more discovery and it needs to go back, then all this would kind of be off the table. If we were determined just hypothetically that their district court was correct, at least vis-a-vis the Holland America terms, not raising a factual issue, is it clear that the forum would necessarily be France because you still would have these two competing contracts? And would that be something that the district court would determine? I understand the question. Our contention would be that the original classification contracts are the ones that are in effect. I know what you want, but I'm just asking you, how would that be resolved? Who would figure that out? If it were sent back, I would then, I guess, have to concern. It would then be an issue of whether there was, in fact, modifications of the 91 contract with the general conditions coming in. In the end, these general conditions were just referred to.  But the question is no. Would that be determined in the district court in the Western District of Washington or would it be a different lawsuit and somebody would they'd have to file in England or France and that court would determine it for arbitration? I think it would have to be in an and I don't think it would be in this lawsuit, personally. I think the case should be the general conditions from 2000, which again were raised in their response of their reply affidavits and were never addressed below, are general conditions that were in invoices sent by BV, NA, and BV, Canada. But the classification contract that we contend applies and which we believe the Court correctly applied was the 91 contract signed by Holland America Line and that, therefore, the case should be dismissed in favor of the French form. And the Court actually, there's no form being denied here. The Court said in both dismissals as to BV, NA, SA and Canada that the plaintiffs were free to proceed in France if they wanted to do that. Counsel. Yes, Your Honor. You made the point that you thought that abuse of discretion is the standard. It may be, but then we look and see at this stage when you've got a 12B argument, how much do you need to make a prima facie case and it would be an abuse of discretion if the district court required more than a prima facie case. So, I mean, say an abuse of discretion isn't too much. Well, maybe I should, you're correct, Your Honor, and I, but it does allow looking outside the pleadings and I do not believe that the standard requires that you accept the allegations is true. That's the other piece of that standard. And I don't want to step on my co-counsel. Yes. We'll hear from your co-counsel now. Any other questions? If there are no other questions, I appreciate the Court's time. Thank you, Your Honors. May it please the Court. I'm Gerald Zingoni. And when I represent the European entities, I represent Varsala because that's the way they say it. And when I represent the U.S. entities, I represent Warsala because that's the way they say it. And even though I represented them for 25 years, they have not been able to come together on how they pronounce their own company's name. Let me start with saying, you know, this was mostly about BV and the briefs were mostly about BV, but what really gets lost in this is that we agreed to jurisdictional discovery. We didn't limit it in any way. They served document requests, interrogatories, requests for admissions. We responded to all of them. They asked for two depositions. We produced the witnesses. They didn't ask for a witness from Varsala, Finland. Had they, we would have produced it. They did not ask for a witness from Varsala Corporation. Had they, we would have produced one. The record that they have is their making. There is no denial of discovery on appeal here. And so the, so honestly, the record is complete as regards to the Varsala defendants. Now, I'm not, I'm not meaning to suggest that if they had taken that discovery, they would have found something that would have allowed them to serve jurisdiction. I just want to make sure the Court understands that they were given a full opportunity to develop their record. Bottom line here is that they don't contend and have never contended that they have a direct relationship with Varsala, Finland or Varsala Corporation. First of all, Varsala Corporation is a pure holding company. It's not in the business of anything other than holding the shares of another company. Varsala, Finland is a manufacturer. It's not a service company. It's not a repair company. They have dealt with a 600-employee company based in the United States that is primarily a company that services engines for ships. Yes, Varsala engines, but also engines produced by other people. It is by no means, and they've abandoned the argument, the alter ego of Varsala, Finland or Varsala Corporation. It, under all analyses, has its own reason for being and its own business purpose. They put in the record a purchase order that they submitted in 2002 to Varsala, North America for something that had a reference to their terms and conditions. What we say is, so what? What does that have to do with Varsala, Finland, who you've never dealt with, or Varsala Corporation? How does that apply to them? They really have come up with no good argument other than it's some agency. Well, as I understand the complaint at least, their allegation is that there's general jurisdiction because of sending products to Washington and so on and so forth. Let me tell you that they did argue in the lower court that there's general jurisdiction. They made no argument. I read the brief three times to make sure that I could stand before this Court and say their opening brief makes absolutely no argument that there's general jurisdiction. That was going to be one of my questions because it seemed like they didn't, but I wasn't clear. They really don't. They don't. I mean, first of all, I mean, having a So let me just get to the blunt bottom line then. If there is no argument in the opening brief that there is general jurisdiction over your clients, then we shouldn't consider that issue even if we were to find that there is general jurisdiction? I don't think there is general jurisdiction, and I should address that. But I think the footnote in Harris-Rutsky makes it plain. They specifically dealt with this exact issue and said if it's not in the opening brief, it's waived. It's note one in Harris-Rutsky, 328 Fed Second at 1129. Now, general jurisdiction. And there really is no general jurisdiction argument. I'll be back here in a year or so on a dismissal in another case that Mr. Deggans heard about. Perhaps not before us. That was on general jurisdiction. I mean, the law of general jurisdiction twas on the whole line of cases and what is required for general jurisdiction, which is approximates physical presence. They don't even come close to satisfying the standard. They made the argument in the lower court, and they didn't even raise it. And the Federal rule, which seems to grant jurisdiction if they cannot be under jurisdiction of any State court. Well, that's 4K2. And, you know, what's interesting is that rule has existed a very long time, and there are precious few cases in the United States where anyone has ever found jurisdiction under 4K2. It's a very difficult statute. I think courts have really tried to figure out what ultimately it means. The Dovey-Unicall case points out, you know, if you pierce the veil, you really have jurisdiction through the subsidiary. So what does it mean? And what would be a company that has extensive contacts with the United States but no contact with any State in particular? I don't think — I don't know of any opinion that's actually found that. I think — Here we don't — Extensive contacts. What is the evidence of that? Yeah. There's none here, I mean, frankly. Because Varsala Corporation, first of all, is a holding company. There's absolutely no evidence of any contacts with the United States. And Varsala Finland also. There are no sales. Varsala Finland, we put in a declaration. We answered interrogatories. It has absolutely no sales to the United States. It doesn't advertise in the United States. They presented their evidence of contact between Varsala — and, again, it was not Varsala Corporation. It was some subsidiary, a person from Varsala in Finland, I believe, came to a cruise convention in Miami. But, I mean, that could not possibly be a basis for asserting general jurisdiction over kind. And it certainly couldn't be substantial contacts to result in the assertion of general jurisdiction. And, you know, clearly their claims don't arise from that, so it wouldn't be specific. I have, as I've read those cases, tried to think about what would satisfy 4K2. And I think it might be a situation where, say, you know, someone is doing a private placement of stock and is basically soliciting customers in the United States but could say, well, I only had two in Alaska and I only had one in Florida and I only had three in Mississippi. And so I'm not — you know, and so basically they would sort of one by one feed a jurisdiction in each of those places. And then, effectively, even though they specifically and directly marketed the private placement to U.S. customers, they were not subject to jurisdiction in any one state. I think that might do it. You know, but, I mean, that's — I'm sort of intellectualizing here. I mean, it's nothing like that is in the record here. Where's the burden? Do you have to show that there's no possibility of your being sued in any of the 50 states, or does the other side have to show that? I think it's their burden, first of all. I mean, we have stated, I mean, in answer to Andrei, that we don't believe Varsola Finland is amenable to suit in the United States. And certainly I spent 20 years vigilantly trying to protect that. And Varsola Corporation wasn't asked by the plaintiffs. But I think it's their burden. I mean, they have to show that 4K2 would apply. Counsel, you have exceeded your time by quite a bit. Thank you very much. And I believe that Mr. — I'm not going to pronounce it right either. Is it Bruce Flaherty? Bruce Flaherty. Sorry. That you have several minutes left. Let me address a couple of things in order. First, with regard to the issue of whether or not the 4K2 jurisdiction was raised in our opening brief. That, in fact, it was on a number of occasions, page 46 and again on page 54 and throughout that area. That is based upon the stream of commerce theory as set forth in the Acai case. And essentially, our case is kind of like Acai, except we have a little bit more. We have a distributorship, which is one of the things that Her Honor, Justice O'Connor mentioned might be valuable to the Court in assessing whether or not simply putting a stream of goods into a stream of commerce was sufficient. In fact, the Court, as you know, said it was not, said there has to be more. In this case, there is more. There's advertising. Wärtsilä advertised here through their website, wärtsilä.com. They established channels to service their products in this form by having a distributorship in Wärtsilä NA, North America, through whom you had to purchase Wärtsilä products. As they admitted in their discovery, the only party you could purchase Wärtsilä products from or was through Wärtsilä North America. And then with regard to the issue of whether or not it's our burden, and I think it is, to prove 4K2 jurisdiction, we have cited an admission in our papers that, and I think counsel made it plain, that Wärtsilä says they're not amenable to jurisdiction in any particular State in the United States. And they're not amenable, therefore, to jurisdiction. If they're not amenable to jurisdiction, therefore, here in the State of Washington, then 4K2 certainly would apply based upon the stream of commerce theory and the evidence there set forth in our briefs. And last, Your Honors, I just want to mention, and I think counsel has gotten this wrong and it disturbs me, the standard for review with regard to the form selection clause, it is abuse of discretion with regard to the application of a form selection clause, but this Circuit's been very clear that whether the parties agreed to a form selection clause is reviewed de novo. And that's really what's at stake here. We're saying we didn't agree to that form selection clause. It doesn't have application. Secondarily, we're saying if it does have application, you should review it on an abuse of discretion standard, and we argue that the Court has abused its discretion for two reasons. One, it didn't follow the roadmap in Murphy. And second, most importantly, under Bremen, sending the case back to France would violate public policy in that it would deny us our right to trial by jury. And I convey you to the DHX case. That was a Central District of California case with Judge Percy Anderson in which she determined that denying a plaintiff the right to trial by jury is a fundamental right which violates public policy and would therefore be violated. You know, that argument would be true in every single case where we defer and say no U.S. forum, but foreign forum, because virtually no foreign forum has a right to trial by jury in a civil case. And I don't think that you have any case other than, with all respect to Judge Anderson, give any other case. Understood, Your Honor. Okay. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of all parties. With that, we will stand adjourned. All rise. The court is in session to stand adjourned.
judges: B. Fletcher, Graber, McKeown